IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE LEE GARDNER, | ) | CASE NO. 1:09 CV 1148 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The main issues before the undersigned are the following: (1) whether the ALJ erred in her assessment of the opinions of Plaintiff's medical treating sources; and (2) whether it was proper for the ALJ to base her residual functioning capacity ("RFC") findings on the recommendation of a nonexamining state agency physician.  For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On September 20, 2005, Plaintiff Dale Lee Gardner applied for Supplemental Security Income and Disability Insurance Benefits (Tr. 22).  In his applications, Plaintiff alleged that he became disabled on June 4, 2004 due to back and hip injuries and depression (Tr. 81).  Plaintiff's applications for benefits were denied initially and upon reconsideration(Tr. 49, 50, 340, 341).  Plaintiff then requested an administrative hearing (Tr. 55). On September 29, 2008, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Janice Bruning (the "ALJ") (Tr. 342-361). Thomas Gusloff, a vocational expert (the "VE"), also testified at the hearing (Tr. 357-361).

The ALJ issued a written decision on November 14, 2008 in which she found at Step Five of

the five-step sequential evaluation[1] that Plaintiff retained the RFC to perform a limited range of light work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 17-22). Plaintiff requested review of the ALJ's decision from the Appeals Council (Tr. 9). On March 2, 2009, the Appeals Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 5-7). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 43 years old at the time of the ALJ's decision (Tr. 21, 73). Plaintiff has a high school diploma (Tr. 345). He has past relevant work as an industrial truck operator, kitchen helper and dish washer (Tr. 358).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## II. DISABILITY STANDARD

A claimant is entitled to receive DIB and/or SSI only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505; 416.915.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

Plaintiff's claim is based both on physical and psychological impairments. Plaintiff's physical impairments relate to back and hip injuries suffered as far back as 2004 (Tr. 81, 237); his psychological impairments relate to his depression (Tr. 81). The ALJ determined that Plaintiff had the Residual Functioning Capacity ("RFC") to "perform less than the full range of light work...as he should never climb ladders, ropes, or scaffolds; he needs a sit/stand option at will; and such work should be unskilled with only occasional contact with general public, co-workers and supervisors" (Tr. 17). Plaintiff's appeal does not challenge the ALJ's determination with regard to his physical impairments. Rather, Plaintiff only contests the ALJ's decision with regard to his psychological impairments. Specifically, Plaintiff maintains that the ALJ gave too much weight to the opinions of the state agency physician, and not enough weight to his examining and treating physicians, Dr. Leventhal and Dr. Gomes.

### 1. The Medical Opinions of the Examining Physicians

To begin, Plaintiff claims that the ALJ erred by failing to give significant weight to the findings of the consultative physician, Dr. Leventhal. Plaintiff maintains that Dr. Leventhal's opinions were crucial to making a determination of his disability status. Dr. Leventhal diagnosed Plaintiff with major depressive disorder and anxiety disorder; he also opined that Plaintiff had a markedly impaired ability to maintain attention and withstand stress (Tr. 242-243). Yet, the ALJ gave no significant

weight to the doctor's conclusions because she determined that they were based on "claimant's self-reports, at a one-time evaluation, with no other supporting evidence" (Tr. 20). In support of its argument, Plaintiff contends that Dr. Leventhal's assessment was based not only on Plaintiff's self-reports, as the ALJ insists, but also on Dr. Leventhal's own observations during the one-time evaluation.

Plaintiff's argument is not well taken. It is well-established that an ALJ must consider and weigh each medical opinion in the record. *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639 (Table) (6th Cir. 1999); 20 C.F.R. § 416.927(d). However, an ALJ is not required to give any special deference to a physician who has only examined Plaintiff one time. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). In the instant case, Dr. Leventhal examined Plaintiff only on one occasion, October 31, 2005. While it is proper for the ALJ to discredit medical opinions partially based on Plaintiff's subjective complaints, *Brumett v. Comm'r of Soc. Sec.*, No. 1:07cv955, 2009 WL 690250 (S.D. Ohio Mar. 11, 2009); *Young v. Sec'y of Health & Human Svcs*, 925 F.2d 146 (6th Cir. 1990), it is not necessary for this Court to determine whether Dr. Leventhal's opinions were based on Plaintiff's self-reports or his own observations. Regardless of the source, Dr. Leventhal's conclusions were nonetheless based upon his single meeting with Plaintiff, and the ALJ was within her right to give no significant weight to those opinions. *See Barker*, 40 F.3d at 794.

Next, Plaintiff contends that the ALJ erred by failing to recognize Dr. Gomes as Plaintiff's treating physician and by failing to give controlling weight to his opinions as such. Dr. Gomes is a physician at Bridgeway, Inc. (Tr. 308). Plaintiff maintains that he had an ongoing treatment relationship with Dr. Gomes from March of 2007 through September of 2008. The record evidences two documents signed by Dr. Gomes - an Initial Psychiatric Evaluation, dated March, 28, 2007 (Tr.

5

305-308), and an Individual Assessment dated September 9, 2008 (Tr. 295-296). The remaining treatment documents from Bridgeway are signed by Ms. Jacalyn Barrett, LPC. The record shows documents signed by Ms. Barrett on March 21, 2007 and July 13, 2007 (Tr. 300, 302-303, 327). Additionally, during the hearing, Plaintiff testified that he met with Dr. Gomes roughly once a month, as needed, and that he had done so "for about a year" (Tr. 348, 351). In Dr. Gomes' evaluation dated September 9, 2008, he opined that Plaintiff had poor to no ability to: 1) understand, remember and carry out detailed job instructions; 2) deal with work stress; 3) maintain attention for extended periods; and 4) work in coordination with or proximity to others without being distracted (Tr. 295-296). However, the ALJ gave no significant weight to Dr. Gomes' opinions finding that there was no treatment relationship between the parties and that Dr. Gomes' opinions did not prove that Plaintiff was disabled as of his alleged onset date (Tr. 19).

The Sixth Circuit has long held that the opinions of treating physicians are entitled to greater weight. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In addition, these opinions are generally given greater weight than the opinions of other physicians who have not examined Plaintiff. *See Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524 (6th Cir. 1981) *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). A treating physician is defined as a "physician, psychologist, or other acceptable medical source who provides [Plaintiff], or has provided [Plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. § 404.1502. As mentioned above, a physician who conducts a one-time examination is not a treating source. *See Barker*, 40 F.3d at 794. To constitute as a treating source, the physician must see Plaintiff with a "frequency consistent with accepted medical practice for the

6

type of treatment and/or evaluation required for the medical condition."[2] *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Yet, the ALJ is not bound by a treating physician's opinions, and in fact may reject the treating physician's findings after stating good reasons for such rejection. *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002). However, the requirement to state "good reasons" is only triggered after the ALJ determines that the physician qualifies as a treating source. *See Smith*, 482 F.3d 873. Thus, the initial issue this Court must decide is whether the ALJ's failure to recognize Dr. Gomes as Plaintiff's treating physician is supported by substantial evidence.

To be fair, the ALJ's decision credits Plaintiff as seeing Dr. Gomes "no more than two times in March 2007, and once in July 2007," even though the record only evidences a meeting between the parties once on March 28, 2007, and possibly again on September 9, 2008 (Tr. 19).[3] The only other evidence reflecting a treating relationship between Plaintiff and Dr. Gomes is Plaintiff's testimony during the hearing at which he stated that he saw Dr. Gomes approximately once a month for the past year (Tr. 348-351). However, the ALJ found Plaintiff not to be fully credible (Tr. 19). It is within the ALJ's strict province to make credibility determinations. *Hoskins v. Comm'r of Soc. Sec.*, 106 F.

---

[2]Contrary to the ALJ's assertion (Tr. 19), this Court is unaware of any binding case law which expressly requires the claimant and physician to have maintained a treatment relationship for at least twelve months in order for the physician to be deemed a treating source.

[3]Although, the ALJ acknowledged Dr. Gomes' assessment of Plaintiff dated September 9, 2008, the face of the document itself does not clearly indicate whether Dr. Gomes saw Plaintiff in conjunction with making his assessment that day. As for the records from Bridgeway evidencing additional meetings in March and July of 2007, there is only one document actually signed by Dr. Gomes, which is dated March 28, 2007. The other two documents from Bridgeway dated March 21, 2007 and July 13, 2007 are signed by Ms. Jacalyn Barrett. It is therefore, inconclusive, whether Plaintiff saw Ms. Barrett on those visits or whether he saw Ms. Barrett and Dr. Gomes.

App'x 412, 415 (6th Cir. 2004) *citing* Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987). Because of this finding, it was proper for the ALJ to discredit Plaintiff's statements regarding his ongoing treatment with Dr. Gomes.  Therefore, this Court accepts the ALJ's determination regarding Plaintiff's credibility and disregards Plaintiff's testimony alleging ongoing treatment with Dr. Gomes. *See Walters v. Comm'r of Soc.* Sec., 127 F.3d 525 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

The Sixth Circuit case *Smith v. Comm'r of Soc. Sec.* is somewhat instructive. 482 F.3d 873. In *Smith*, the court ruled that one of the plaintiff's doctors did not constitute as a treating source, despite having examined the plaintiff, refilled and prescribed medication, and denied the plaintiff's request for additional medication on a subsequent visit. *Id.* at 877. In the case *sub judice*, the first of the only two records signed by Dr. Gomes shows that Dr. Gomes assessed Plaintiff, refilled medication, and prescribed new medication (Tr. 308).  The second record signed by Dr. Gomes was dated on September 9, 2008, just twenty days prior to Plaintiff's hearing, and does not clearly indicate whether Dr. Gomes actually saw Plaintiff at the time of assessment  (Tr. 296).  Aside from Plaintiff's testimony, there is no other evidence in the record proving that Plaintiff and Dr. Gomes had an ongoing treatment relationship between March of 2007 and September of 2008.

The record supports the ALJ's determination that Dr. Gomes was not Plaintiff's treating physician.  The two records which show that Plaintiff saw Dr. Gomes are over 17 months apart and do not reflect that Plaintiff and Dr. Gomes met with sufficient frequency to consider their contact an ongoing treatment relationship pursuant to 20 C.F.R. § 404.1502.  Neither does Dr. Gomes' limited role of examining Plaintiff and prescribing and refilling prescriptions, constitute the doctor as

Plaintiff's treating physician. *See Smith*, 482 F.3d 873. As a consequence, the Court finds that the ALJ did not err by failing to recognize Dr. Gomes as Plaintiff's treating physician.[4] Because this Court finds that the ALJ's determination was supported by substantial evidence, it is unnecessary to address whether the ALJ provided "good reasons" for not giving controlling weight to Dr. Gomes' findings. Such a requirement only applies when an ALJ discredits the opinions of a treating physician. *See Smith*, 482 F.3d at 875-76; 20 C.F.R. § 404.1527(d)(2).

Although a physician's opinion may not be entitled to greater weight pursuant to the "treating physician's rule," the ALJ must still consider and weigh the opinion. *See Holden v. Astrue*, No. 08-00483-B, 2009 WL 2905570, at *9 (S.D. Ala. Sept. 4, 2009); 20 C.F.R. § 404.1527(d); SSR 96-2p. The regulations set out the factors that the ALJ should consider when weighing any medical opinion. 20 C.F.R.§ 1527(d)(1-6). Those factors include the length, frequency, and nature of the treatment, supportability, consistency, and specialization of the physician's practice. *Id.* We have already addressed the ALJ's consideration of the length and frequency of Dr. Gomes' treatment (Tr. 19). The ALJ also indirectly addressed the supportability and consistency of Dr. Gomes' conclusions by stating that Plaintiff's treatment for depression had been sporadic and that he had not been hospitalized or required urgent treatment for his mental health symptoms[5] (Tr. 19-20). Thus, the ALJ fulfilled her

---

[4]Even assuming *arguendo*, that Dr. Gomes did constitute as a treating source, the ALJ would have been free to discredit his findings as being internally inconsistent. An ALJ is not bound by the conclusions of a treating physician when they are not internally consistent. *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *4-5 (6th Cir. Aug. 12, 2010). Dr. Gomes' September 2008 assessment of Plaintiff contained inconsistent findings. For example, Dr. Gomes opined that Plaintiff had a "fair" ability to understand, remember and carry out both simple and complex job instructions, yet in the same assessment the doctor opined that Plaintiff had "poor or none" ability to carry out "detailed, but not complex job instructions" (Tr. 296). Thus, the record supports the ALJ's decision to give little weight to Dr. Gomes' conclusions.

[5]As Plaintiff correctly notes, his failure to seek urgent treatment did not automatically preclude the possibility that he suffered from mental health symptoms. However, the failure to

9

obligation to consider Dr. Gomes' opinions. Accordingly, the Court finds that the ALJ's determination of the weight afforded Dr. Gomes' findings is supported by substantial evidence.

2. The Medical Opinions of the Non-Examining Physician

Lastly, Plaintiff maintains that the ALJ committed reversible error by relying on the opinions of the state agency psychologist, Dr. Meyer, because his conclusions were not based on Plaintiff's entire record. Dr. Meyer reviewed Plaintiff's file and issued his opinions regarding Plaintiff's RFC in November of 2005 (Tr. 254). At that time, he diagnosed Plaintiff with major depressive disorder and anxiety disorder, but noted that Plaintiff had a positive work history (*Id.*). Dr. Meyer concluded that Plaintiff was "[c]apable of simple and moderately complex routine work, within any physical conditions...[and was] motivated to perform, in [a] setting with regular expectations, occasional intermittent interactions with others and few changes" (*Id.*). In addition, Dr. Meyer opined that Plaintiff was not fully credible (*Id.*). However, he noted that in rendering his opinion he gave additional weight to Plaintiff's medical records which indicated that Plaintiff had "no psych symptoms, complaints of psych, diagnosis or medication through 9/05" (*Id.*).

Plaintiff argues that Dr. Meyer's findings are ill-conceived because subsequent to his assessment Plaintiff began treatment for his psych symptoms and started taking medication for such symptoms. Thus, Plaintiff contends that the ALJ erred by giving significant weight to Dr. Meyer's findings. In support of this argument, Plaintiff points to the medical records from Bridgeway in 2007, where Plaintiff was seen by Dr. Gomes and Ms. Barrett (Tr. 295-330). The

---

seek urgent or in-patient treatment can cast doubt on a plaintiff's assertion that she/he suffered from such conditions. *Cf. Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) *citing Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

records from Bridgeway show that Plaintiff received treatment from its mental health professionals (Tr. 295-330) and was taking psych medications, such as lexapro, zyprexa, prozac, and trazedone in 2007 (Tr. 298, 306). Therefore, Plaintiff maintains that the ALJ should not have given significant weight to the opinions of Dr. Meyer, because his findings were admittedly based upon information that was no longer accurate concerning Plaintiff's mental health.

Defendant admits that the ALJ's RFC relied upon Dr. Meyer's assessment,[6] but argues that the ALJ was justified in doing so. Defendant contends that Dr. Meyer's lack of knowledge regarding Plaintiff's exposure to psych treatment is unavailing because another doctor later affirmed Dr. Meyer's findings. In fact, in July of 2006, nearly one year after Dr. Meyer's examination, another state psychologist, Dr. Semmelman, affirmed Dr. Meyer's 2005 conclusions (Tr. 269).[7] Ultimately, Defendant argues that although Plaintiff began psych treatment in 2007, his mental function was no different than it was when he was examined by Dr. Meyer two years prior.

An ALJ is required to consider the findings of the state agency psychologist. 20 C.F.R. § 404.1527(f)(2)(i). However, an ALJ also must generally "give more weight to the opinion of a source who has examined [Plaintiff] than to the opinion of a source who has not examined [Plaintiff]." 20 C.F.R. § 404.1527(d)(1). In the case *sub judice*, Dr. Gomes and Dr. Leventhal both constitute as nontreating (but examining) sources. *See* 20 C.F.R. § 404.1502; *Smith*, 482 F.3d

---

[6]Plaintiff agrees that the ALJ relied upon Dr. Meyer's RFC but also argues that the ALJ's RFC is inconsistent with Dr. Meyer's RFC because Dr. Meyer limited Plaintiff to "simple and moderately complex routine work" (Tr. 254) while the ALJ simply stated that Plaintiff was capable of light work, without incorporating any complexity limitations (Tr. 17). Plaintiff's argument is unavailing. Any alleged difference between the ALJ's RFC and Dr. Meyer's RFC is irrelevant because in answering the ALJ's hypothetical question, the VE identified three *unskilled* representative jobs that Plaintiff could perform (Tr. 358-60). Because the VE listed *unskilled* jobs Plaintiff's argument is moot. By definition unskilled jobs are "not complex."

[7]Dr. Semmelman affirmed Dr. Meyer's findings without comment (Tr. 269).

11

at 875. A physician will be deemed a "nontreating source" when the physician "has examined the claimant but does not have, or did not have, an ongoing treatment relationship with [him]." *Id.* citing 20 C.F.R. § 404.1502. As previously discussed, both Dr. Leventhal and Dr. Gomes examined Plaintiff, yet neither maintained a sufficient treatment relationship with Plaintiff to be deemed Plaintiff's treating physician. In addition, Dr. Meyer is a nonexamining source because he never physically examined plaintiff, but rather based his opinions solely on Plaintiff's medical record. *See Smith*, 482 F.3d at 875.

Although the ALJ must generally accord more weight to the findings of a nontreating source over those of a nonexamining source, the ALJ is not prohibited from adopting the findings of a nonexamining source. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010). For example, in *Swafford v. Astrue*, No. 09-265-KSF, 2010 WL 2612325, at *5 (E.D. Ky. June 25, 2010), the district court held that the ALJ did not err by adopting the RFC of a nonexamining source over the RFC proposed by the examining, nontreating source. In *Swafford*, the Plaintiff argued that the ALJ erred by adopting the nonexamining physician's findings because his opinions were not made based on the plaintiff's entire record, namely, without knowledge of the results of an examination conducted after the nonexamining physician had reviewed the record and issued his findings. *Id.* at *4-5. Nevertheless, the district court held that the ALJ did not err by relying on the nonexamining physician's findings because unlike the nonexamining physician, the ALJ had reviewed the records from the later examination, and "properly made a determination on its weight." *Id.* at *5. In making its decision, the district court emphasized that "[d]eterminations of a Claimant's RFC, the nature and extent of the Claimant's impairments, application of vocational factors, and whether a Claimant is disabled are ultimately the purview of the ALJ, and are not

12

medical opinions" *Id. citing* 20 C.F.R. § 404.1527(e)(1-3).

*Swafford* is particularly persuasive in this case. The facts in *Swafford* are similar to the facts of the case now before the Court. Essentially, Plaintiff contends that the ALJ committed reversible error by relying on the opinions of the nonexamining physician, Dr. Meyer, because his opinions were not based on the entire record. More specifically, Plaintiff argues that Dr. Meyer did not review the treatment notes from Dr. Gomes or Bridgeway before rendering his opinion. As the court in *Swafford* ruled, so says this Court in the instant case. Although Dr. Meyer did not review Plaintiff's treatment notes from Dr. Gomes and Bridgeway prior to rendering his opinion, the ALJ performed her duties by considering the entire record before rendering her decision. *See Swafford, 2010 WL 2612325 at \*5 citing Ealy,* 594 F.3d at 513 ("Even if non-examiner had not had access to later medical findings, ALJ discussed them and weighed their impact on the Claimant's condition.").

The ALJ acknowledged Plaintiff's subsequent treatment at Bridgeway with Dr. Gomes and his examination by Dr. Leventhal (Tr. 19-20). In addition, the ALJ properly weighed the opinions of both doctors as discussed above (*Id.*). Furthermore, the ALJ's decision indicated that there was no evidence to support Dr. Leventhal's opinions (Tr. 20) and pointed to inconsistencies in Plaintiff's testimony (Tr. 19). For example, Plaintiff stated that he was unable to ride the bus due to panic attacks (Tr. 348), yet he rode the bus to the hearing (Tr. 353). Accordingly, the ALJ had sufficient reasons to discredit the opinions Dr. Gomes and Dr. Leventhal, and adopt Dr. Meyer's findings. *See Ealy,* 594 F.3d at 513-15; *Swafford*, 2010 WL 2612325 at \*3-5.

Plaintiff also takes issue with the ALJ noting that Plaintiff originally indicated that he

stopped working due to pain from an injury and not from his depression. According to Plaintiff, the ALJ was misguided in relying upon this fact. Without belaboring this point, the Court determines that the ALJ noted this fact in assessing Plaintiff's credibility, and not in determining whether Plaintiff suffered from a mental disability. The ALJ was addressing the conflicting statements which Plaintiff made in reference to his reasons for leaving the workplace (Tr. 19). The ALJ noted that Plaintiff first indicated that he stopped working because of pain, but later stated that he stopped because he did not like crowds (*Id.*). Thus, Plaintiff's argument that it was improper for the ALJ to address this issue is unavailing.

## V. **DECISION**

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

    s/ Kenneth S. McHargh
    Kenneth S. McHargh
    United States Magistrate Judge

Date: September 23, 2010.